IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| HEALTH SYSTEM INSIGHT<br>*f/k/a* THINKWELL INSTITUTE<br>    8525 N. 23rd Ave.<br>    Suite 100<br>    Phoenix, AZ 85201<br><br>        Plaintiff,<br><br>    v.<br><br>THINKWELL, LLC<br><br>Serve: Incorp Services, Inc.<br>    1519 York Rd.<br>    Lutherville, MD 21093<br><br>YOGESH RAJKOTIA<br><br>    3636 Executive Center Drive<br>    Suite 360<br>    Austin, TX 78731<br><br>        Defendants. | Case No. |

## COMPLAINT

Health Systems Insight *f/k/a* ThinkWell Institute ("Plaintiff" or "TWI"), by and through its undersigned counsel, hereby files this Complaint, stating as follows:

1. This cases arises from the relationship between a for-profit entity and a non-profit entity that, at all relevant times, were controlled by the same individual.

2. Defendant Yogesh Rajkotia ("Mr. Rajkotia") was, and upon information and belief remains, the sole member of Defendant ThinkWell, LLC ("TW" or the "LLC"). Moreover, Mr. Rajkotia was the founder, and all at relevant times, a director and officer, of TWI.

3. As demonstrated in greater detail below, Mr. Rajkotia abused his position with TWI to improperly enrich TW and, indirectly, himself.

4. Plaintiff asserts claims against Mr. Rajkotia for breach of fiduciary duty, negligence, and breach of contract. It asserts a claim against TW for breach of contract and unjust enrichment.

**PARTIES**

5. Plaintiff is a not-for-profit corporation organized under the laws of the State of Arizona and having its principal place of business at 8525 N. 23rd Ave., Suite 100, Phoenix, AZ 85201.

6. TW is a Maryland for-profit limited liability company organized under the laws of the State of Maryland and having its principal place of business at 5800 Deal Place, Chevy Chase, MD 20815.

7. Mr. Rajkotia is an individual resident of the State of Texas.

**JURISDICTION AND VENUE**

8. TW is a resident of the State of Maryland and therefore is subject to the personal jurisdiction of this Court pursuant to Md. [Cts. and Jud. Proc.] Code § 6-102.

9. Mr. Rajkotia is subject to personal jurisdiction with the State of Maryland pursuant to Md. [Cts. and Jud. Proc.] Code § 6-103, as, *inter alia*, the causes of action asserted against him arise from his transaction of business in the State of Maryland.

10. This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. § 1332 (Diversity of Citizenship).

11. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b)(2). In the alternative, venue is appropriate pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS

**I.      The Two Entities**

**A.      TW's Origins, Purpose, and Eventual Name Change**

12.     The Institute for Collaborative Development, LLC ("ICD"), a for-profit entity, was formed in the State of Maryland in April 2011.  Mr. Rajkotia was ICD's founder and sole member.

13.     According to ICD's Articles of Organization, the company's primary purpose was "to promote health systems strengthening and good governance in developing countries."

14.     In practice, this meant provision of services related to, *inter alia*, governance, human resources for health, public financial management, and research and evaluation.

15.     By Articles of Amendment filed in June 2016, ICD officially changed its name to ThinkWell, LLC.

**B.      Plaintiff's Origin, Purpose, and Eventual Name Change**

16.     ThinkWell Institute, a not-for-profit corporation, was formed in the State of Arizona in May 2015.

17.     Upon information and belief, Mr. Rajkotia formed TWI in order to seek and obtain charitable grants related to the types of projects that the LLC performed for profit.

18.     According to TWI's Articles of Incorporation, the organization's purpose, like the LLC's primary purpose, was "to promote health systems strengthening and good governance in developing countries."

19.     Mr. Rajkotia was one of TWI's first board members and was the organization's first president and treasurer.  At all times relevant to this case, he held those positions.

20. Approximately six (6) months after TWI's incorporation, the Internal Revenue Service recognized the organization as tax-exempt pursuant to Section 501(c)(3) of the Internal Revenue Code.

21. TWI ultimately obtained charitable grants, primarily from the Gates Foundation. Plaintiff continues to this day to operate under such grants.

22. By Articles of Amendment filed on July 11, 2025, Plaintiff changed its name to Health Systems Insight. During all times relevant to this case, however, the organization's name was ThinkWell Institute.

### C. The TWI's Conflicts of Interest Policy

23. The original and amended sets of TWI Bylaws applicable at all times relevant to this case (collectively the "Bylaws") contained identical "conflict of interest" provisions.

24. Pursuant to Section 7.01 of the Bylaws, the policy's purpose was

> to protect the Corporation's interest when it is contemplating entering into a transaction or arrangement that might benefit the private interest of an officer or director of the Corporation.

Bylaws § 7.01.

25. Bylaws Section 7.02 defined "interested person" as

> [a]ny director, officer, or member of a committee with Board delegated powers who has a direct or indirect financial interest, as defined below, is an interested person. If a person is an interested person with respect to any entity with which the Corporation is affiliated, he or she is an interested person with respect to all the Corporation.

*Id.* § 7.02(a).

26. According to Bylaws Section 7.02, a person has a "financial interest"

> if the person has, directly or indirectly, through business, investment or family --
>
>     i)   an ownership or investment interest in any entity with which the Corporation has a transaction or arrangement, or

4

    ii) a compensation arrangement with the Corporation or with any entity or individual with which the Corporation has a transaction or arrangement, or

    iii) a potential ownership or investment interest in, or compensation arrangement with, any entity or individual with which the Corporation is negotiating a transaction or arrangement.

*Id.* § 7.02(b).

27. Pursuant to Bylaws Section 7.03, an interested person, with regard to "any actual or potential conflict of interest,"

> must disclose the existence of his or her financial interest and must be given the opportunity to disclose all material facts to the Directors and members of committees with Board- delegated powers considering the proposed transaction or arrangement.

*Id.* § 7.03(a).

28. Bylaws Section 7.03(b) stated in relevant part as follows:

> After disclosure of the financial interest and all material facts, and after any discussion with the interested person, he/she shall leave the Board or committee meeting while the determination of a conflict of interest is discussed and voted upon. The remaining Board or committee members shall decide if a conflict of interest exists.

*Id.* § 7.03(b).

29. Bylaws Section 7.03(c) set forth the next steps to be taken:

    i) An interested person may make a presentation at the Board or meeting, but after such presentation, he/she shall leave the meeting during the vote on the transaction or arrangement that decides upon the possible conflict of interest.

    ii) The President of the Board or chair of the committee shall, if appropriate, appoint a disinterested person or committee to investigate alternatives to the proposed transaction or arrangement.

    iii) After exercising due diligence, the Board or committee shall determine whether the Corporation can obtain a more advantageous transaction or arrangement with reasonable efforts from a person or entity that would not give rise to a conflict of interest.

    iv) If a more advantageous transaction or arrangement is not reasonably attainable under circumstances that would not give rise to a conflict of interest, the Board or committee shall determine by a majority vote of the disinterested Directors whether the transaction or arrangement is in the Corporation's best interest and for its own benefit and whether the transaction is fair and reasonable to the Corporation and shall make its decision as to whether to enter into the transaction or arrangement in conformity with such determination.

*Id.* § 7.03(c).

**II.** **The TW-TWI Relationship**

 **A.** **The Parties' Arrangements and Transactions**

30. Mr. Rajkotia intertwined the operations of his two "ThinkWell" entities. Pursuant to "shared services allocation" arrangements between them, TW and TWI shared services relating to human resources, accounting, administration, and office management. Similarly, one or more Cost Allocation Agreements between them provided for sharing of personnel and facilities and TWI's use of TW's trademarks. In theory, at least, each entity would be responsible for its own costs.

31. Moreover, TW effectively became TWI's primary vendor. That is, TWI, using grant monies, would hire TWI to perform the services relating to the charitable contracts.

32. In addition, Mr. Rajkotia caused TWI to issue multiple low-interest loans to the LLC pursuant to promissory notes.

33. Mr. Rajkotia, as TW's member, had financial interests in all TW-TWI transactions. Upon information and belief, however, he did not, despite his capacities as director, president, and treasurer of TWI, follow the Bylaws' – or any other – "conflict of interest" procedures before the various transactions were consummated. In fact, upon information and belief, he directly caused TWI to agree to all such arrangements.

### B.     TW's Receipt of "Overestimated" Advances and Failure to Repay

34.     Throughout the vendor-customer relationship between the "ThinkWells," Mr. Rajkotia would cause TWI to remit enormous, highly excessive cash "advances" to TW for services to be performed. With very limited exception, TW never repaid the excess funds.

35.     Between non-refunded "advances" and loans that were never repaid, TW has been enriched in an amount exceeding $1 million.

### III.   TWI's Change In Leadership and Discovery of Improper Transactions With TW and Mr. Rajkotia

36.     In October 2022, Mr. Rajkotia stepped down from his official positions with TWI and was replaced by new leadership.

37.     At around the same time, the composition of TWI's board of directors began to change.

38.     Over time, TWI's new leadership were able to at least partly identify the prior improprieties and quantify the resulting losses.

**COUNT I**
**BREACH OF FIDUCIARY DUTY**
**(Against Mr. Rajkotia)**

39.     Plaintiff alleges and incorporates by reference the factual allegations set forth above as if fully set forth herein.

40.     At all times relevant to this Complaint, Mr. Rajkotia was a director and the president and treasurer of Plaintiff.

41.     In his respective capacities, Mr. Rajkotia owed fiduciary duties – including, *inter alia*, loyalty, good faith, and care – to Plaintiff. Pursuant to those duties, he was prohibited from dealing with Plaintiff as, or on behalf of, a party having interests adverse to Plaintiff.

7

42. Pursuant to those duties, Mr. Rajkotia also was required to, *inter alia*, do the following: (i) act solely in the interests of Plaintiff and to avoid self-dealing; (ii) behave in an honest and transparent manner; and (iii) exercise care to ensure the operation of Plaintiff in compliance with its bylaws and applicable law.

43. Mr. Rajkotia violated those duties by, *inter alia*, (i) causing Plaintiff to issue low-interest loans to TW that were not repaid, and (ii) causing Plaintiff to make excessive cash "advances" to TW that were not repaid.

44. Mr. Rajkotia did not follow Arizona Nonprofit Corporation Act- or Bylaw- required procedures to prevent harm arising from his conflicts of interest.

45. By violating his fiduciary obligations, Mr. Rajkotia has, *inter alia*, caused Plaintiff to suffer direct monetary losses.

46. Mr. Rajkotia committed his breaches with malicious intent to cause the harm or at least with complete indifference to the possibility that the harm might occur.

47. Plaintiff has been harmed by the breaches of fiduciary duty in an amount to be determined at trial but not less than $75,000.

48. Plaintiff is further entitled to punitive and exemplary damages in an amount to be determined at trial.

## COUNT II
### NEGLIGENCE
**(Against Mr. Rajkotia)**

49. Plaintiff alleges and incorporates by reference the factual allegations set forth above as if fully set forth herein.

50. As a director of Plaintiff and as Plaintiff's president and treasurer, Mr. Rajkotia owed Plaintiff a duty to protect it from injury.

51. Mr. Rajkotia violated those duties by, *inter alia*, (i) causing Plaintiff to issue low-interest loans to TW that were not repaid, and (ii) causing Plaintiff to make excessive cash "advances" to TW that were not repaid.

52. Mr. Rajkotia's breaches of duty proximately caused Plaintiff to suffer actual injuries and losses.

53. Mr. Rajkotia did not follow Arizona Nonprofit Corporation Act- or Bylaw- required procedures to prevent harm arising from his conflicts of interest.

54. Mr. Rajkotia's breaches amounted to gross negligence, as he committed them with malicious intent to cause the harm or at least with complete indifference to the possibility that the harm might occur.

55. Plaintiff has been harmed by Mr. Rajkotia's negligence in an amount to be determined at trial but not less than $75,000.

56. Plaintiff is further entitled to punitive and exemplary damages in an amount to be determined at trial.

<u>**COUNT III**</u>
**BREACH OF CONTRACT**
**(Against Mr. Rajkotia)**

57. Plaintiff alleges and incorporates by reference the factual allegations set forth above as if fully set forth herein.

58. The Bylaws had the effect of a contractual document, and Mr. Rajkotia, as a director of Plaintiff, was therefore a party thereto.

59. While acting as a director and officer of Plaintiff, Mr. Rajkotia was the sole member of TW, an entity with which Plaintiff engaged in multiple transactions. As such, Mr. Rajkotia was an "interested person" as that term was defined in Bylaw Section 7.02(b).

60. Upon information and belief, Mr. Rajkotia, despite his status as an interested person, failed to follow the procedures set forth in Bylaw Section 7.03 to prevent harm to Plaintiff arising from his conflicts of interest.

61. Similarly, Mr. Rajkotia did not follow Arizona Nonprofit Corporation Act- required procedures to prevent harm arising from his conflicts of interest.

62. Mr. Rajkotia's failures to comply with Bylaw Section 7.03 amounted to breaches of contract.

63. Mr. Rajkotia's breaches of contract caused Plaintiff monetary injury in an amount to be determined at trial but not less than $75,000.

## COUNT IV
## BREACH OF CONTRACT
## (Against ThinkWell, LLC)

64. Plaintiff alleges and incorporates by reference the factual allegations set forth above as if fully set forth herein.

65. Promissory notes that TW signed in favor of Plaintiff were binding contracts.

66. TW breached the promissory notes by failing to repay them according to their terms.

67. The various vendor-customer arrangements between TW and Plaintiff amounted to contracts between them.

68. Implied in those vendor-customer contracts were covenants of good faith and fair dealing. As such, TW, in exercising discretion regarding payment of advances, was required to refrain from doing anything that would have the effect of frustrating Plaintiff's reasonable expectations.

69. TW's acceptance of excessive advances and failure to subsequently repay them directly breached the contracts and/or breached by effectively frustrating Plaintiff's reasonable expectations.

70. TW's breaches of contract caused Plaintiff monetary injury in an amount to be determined at trial but not less than $75,000.

## COUNT IV
## BREACH OF CONTRACT
### (Against ThinkWell, LLC)

71. Plaintiff alleges and incorporates by reference the factual allegations set forth above as if fully set forth herein.

72. Plaintiff's cash advances to TW caused TW to receive a benefit.

73. TW knew of such benefit.

74. Retaining the benefit would be unfair.

75. TW has been unjustly enriched in an amount to be determined at trial but not less than $75,000.

## PRAYER FOR RELIEF

76. WHEREFORE, Plaintiffs respectfully requests that this Court:

A. Award the Plaintiff compensatory and incidental damages in an amount to be determined at trial, but not less than $75,000;

B. Issue an Order requiring Defendants, jointly and severally, to repay Plaintiff all funds wrongfully diverted from Company accounts.

C. Award Plaintiff punitive damages, in an amount to be determined at trial, for Defendant Rajkotia's malicious and outrageous conduct;

D. Award pre-judgment interest and attorneys' fees; and

E. Grant such further relief as the Court deems necessary and proper.

## JURY DEMAND

Trial by jury is demanded as to all issues eligible for such trial.

Respectfully Submitted,

/s/ *David G. Ross*
David G. Ross
Federal Bar No. 16287
GARRIS HORN LLP
1 Research Ct., Suite 450
Rockville, MD 20850
Phone: (301) 610-7730
Email: dross@garrishorn.com

*Counsel for Plaintiff*

Dated: September 12, 2025